**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **VERONICA PIDCOCK,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**PHARMA MANAGEMENT, LLC, MEDTECH WORLDWIDE, INC., VIRTUAL VERIFICATIONS, INC., OPTIMAL MEDICAL GROUP, LLC, TPK MEDICAL SUPPLY, LLC TS&A MEDICAL SUPPLY, LLC, STEVE DECKER, MARCO VARGAS, CHRISTIAN HERING, JASON ZENNA, STEVEN HANS GOLDBERG,** and **ARTHUR GEISS,**<br><br>*Defendants.* | No.<br>8:21 cv 2238 WFJ – JSS<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |



## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff and *qui tam* Relator Veronica Pidcock ("Relator"), by and through her undersigned counsel Lechner Law, and Brown, LLC, alleges of personal knowledge as to her own observations and actions, and on information and belief as to all else, as follows:

### I.
### PRELIMINARY STATEMENT

1.      Relator Veronica Pidcock, a billing and compliance expert for durable medical equipment (DME) suppliers, has unearthed a massive fraud that has

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

drained millions of taxpayer dollars from the Medicare program.

2.      Defendants—numerous fly-by-night companies and their principals—paid illegal kickbacks to telehealth physicians to obtain false and fraudulent orders for DME. Defendants then partnered with DME suppliers, several of which they owned and/or controlled, to fulfill the fraudulent DME orders and bill them to Medicare.

3.      The DME orders did not meet the requirements for Medicare coverage, because the remote physicians did not evaluate the patients as required, there was no documentation of medical necessity in the patients' records, and the orders were generated through unsolicited marketing calls.

4.      Relator brings this *qui tam* action on behalf of the United States of America under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA") to recover treble the damages sustained by, and civil penalties and restitution owed to, the United States as a result of Defendants' fraud.

5.      This complaint is being filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2).

6.      A copy of this complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, was served on the Attorney General of the United States and the United States Attorney for the Middle District of Florida, pursuant to 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## II.
## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, a federal statute.

8.     The Court has personal jurisdiction over Defendants because Defendants are residents of, or are licensed to transact and have transacted business in, this District, and have carried out their fraudulent scheme in this District.

9.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendants can be found in, or transact or have transacted business in this District, and the events and omissions that give rise to these claims have occurred in this District.

10.     This Complaint is filed within the time period prescribed by 31 U.S.C. § 3731(b).

## III.
## NO PUBLIC DISCLOSURE;
## MATERIAL AND INDEPENDENT INFORMATION

11.     Relator makes the allegations in this Complaint based on her own knowledge, experience and observations.

12.     Relator is the original source of the information on which the allegations herein are based, and voluntarily disclosed such information to the Government before filing this action.

3

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

13.   There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint. Alternatively, to the extent that any such public disclosure has been made, Relator possesses information that is independent of and materially adds to any allegations that may have been publicly disclosed.

## IV.
## THE PARTIES

### A.   Plaintiffs

14.   Relator brings this action on behalf of Plaintiff the United States of America. At all times relevant to this complaint, the United States, acting through the Centers for Medicare & Medicaid Services ("CMS"), has reimbursed Defendants for claims for medically unnecessary DME which were obtained through illegal kickbacks.

15.   Relator Veronica Pidcock is a citizen of the United States and, at all relevant times, has been a resident of Pasco County, Florida. She is the CEO of R&R MedHealth Consulting, LLC, which provides Medicare billing and compliance consulting services for DME suppliers.

### C.   Defendants

16.   Defendant Pharma Management, LLC, is a Nevada limited liability company with a principal business address of 13555 Automobile Blvd., Suite 640, Clearwater, FL 33762. Pharma Management is managed and operated by

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Defendants Steve Decker, Marco Vargas, Christian Hering and Jason Zenna. Upon information and belief, Pharma Management ceased operations sometime in 2021.

17.     Defendant Optimal Medical Group, LLC, is a Louisiana limited liability company with a principal business address of 2047 Gees Mill Rd NE, Suite 216, Conyers, GA 30013. Upon information and belief, Optimal Medical Group conducted significant business in Florida.

18.     Defendant TPK Medical Supply, LLC, is a Georgia limited liability company with a principal business address of 1540 Highway 138, Conyers, GA, 30013. Upon information and belief, TPK Medical Supply conducted significant business in Florida.

19.     Defendant TS&A Medical Supply, LLC, is a Florida limited liability company with a registered principal business address of 13555 Automobile Blvd., Suite 650, Clearwater, FL 33762. Upon information and belief, TS&A Medical Supply conducted significant business in Florida.

20.     Defendant Steve Decker resides in North Carolina and is the CEO and owner of Pharma Management, LLC. Steve Decker controlled the financial operations of Defendant Pharma Management, LLC, and oversaw the day-to-day operations of affiliated DME suppliers Optimal Medical Group, LLC, TPK Medical Supply, LLC, and TS&A Medical Supply, LLC.

21.     Defendant Marco Vargas resides in Florida and is the Chief Operating Officer of Pharma Management, LLC. Vargas oversaw the day-to-day operations of

5

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Pharma Management, LLC and affiliated DME suppliers Optimal Medical Group, LLC, TPK Medical Supply, LLC, and TS&A Medical Supply, LLC.

22.     Defendant Christian Hering resides in Florida and is a close associate of Steve Decker, Marco Vargas, and Jason Zenna. Upon information and belief, Hering oversaw the day-to-day operations of Pharma Management, LLC.

23.     Defendant Jason Zenna resides in Georgia and is a close associate of Steve Decker, Marco Vargas, and Christian Hering. Upon information and belief, Zenna controlled financials of Pharma Management, LLC, and controlled the day-to-day operations of affiliated DME suppliers Optimal Medical Group, LLC, TPK Medical Supply, LLC, and TS&A Medical Supply, LLC.

24.     Defendants Optimal Medical Group, LLC, TPK Medical Supply, LLC, TS&A Medical Supply, LLC, Steve Decker, Marco Vargas, Christian Hering, and Jason Zenna, are hereinafter referred to as the "DME Supplier Defendants."

25.     Defendant Medtech Worldwide, Inc. is a Florida corporation with a registered principal business address of 1080 Holland Dr., Suite 1, Boca Raton, FL 33487.

26.     Defendant Steven Hans Goldberg resides in Georgia and is the owner and principal of Medtech Worldwide, Inc. Upon information and belief, Goldberg controlled the day-to-day operations of Medtech Worldwide, Inc., and all conduct attributed to Medtech Worldwide in this complaint can be jointly attributed to Goldberg.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

27.     Defendant Virtual Verifications, Inc. is a Florida corporation with a principal business address of 701 Park of Commerce Blvd, Boca Raton, FL 33487.

28.     Defendant Arthur Geiss resides in Georgia and is the owner and principal of Virtual Verifications, Inc. Upon information and belief, Geiss controlled the day-to-day operations of Virtual Verifications, Inc., and all conduct attributed to Virtual Verifications in this complaint can be jointly attributed to Geiss. Furthermore, Geiss was a close associate of Steven Hans Goldberg and oversaw the day-to-day operations of Medtech Worldwide, Inc.

## V.
## STATUTORY & REGULATORY FRAMEWORK

### A.     The False Claims Act

29.     The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

(A)     "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A);

(B)     "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B); or

(C)     "conspires to commit a violation of subparagraph (A) [or] (B)," *id.* § 3729(a)(1)(C).

30.     "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id.* § 3729(b)(1).

31.     The FCA defines "claim" to include any request for money that:

is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to

7

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

advance a Government program or interest, and if the United States Government—

(I)   provides or has provided any portion of the money or property requested or demanded; or

(II)  will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded....

*Id.* § 3729(b)(2)(A)(ii). Thus, the United States has a cause of action under the FCA for conspiracy to defraud the Medicare program.[1]

32.   For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id.* § 3729(a)(1)(G).[2]

33.   The FCA provides for payment of a percentage of the United States' recovery to a private individual who brings suit on behalf of the United States (the "Relator") under the FCA. *See id.* § 3730(d).

---

[1] *See, e.g., United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 735 (10th Cir. 2018) (holding FCA applicable to claims in violation of Medicare laws); *see also United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, No. 2:16-cv-875, 2019 U.S. Dist. LEXIS 95329, at *12 (D. Utah June 5, 2019) ("While the FCA does not define a conspiracy ... courts have held that general civil conspiracy principles apply to FCA conspiracy claims." (internal quotation marks and citation omitted)).

[2] 31 U.S.C. § 3729(a)(1)(G) provides a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 104-410, 104 Stat. 890 (1990), *amended by* the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015); *see* 28 U.S.C. § 2461 note. On June 19, 2020, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after June 19, 2020, the minimum penalty is $11,665 and the maximum is $23,331. *See* 28 C.F.R. § 85.5; 85 F.R. 37005 (June 19, 2020).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## B.    The Medicare Program

34.    The Medicare program pays for certain healthcare services provided to certain segments of the population. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. *See* 42 U.S.C. §§ 1395 *et seq.*

35.    HHS, through CMS, administers the Medicare program.

36.    The Medicare program has four parts. As relevant here, Medicare Part B covers a portion of the costs of DME if certain conditions are met. *See* 42 U.S.C. § 1395m(a).

37.    CMS enters into agreements with suppliers of durable medical equipment, prosthetics, orthotics, and supplies (DMEPOS) to participate in the Medicare program. DMEPOS suppliers participating in Medicare may seek reimbursement from CMS for DME provided to patients who are Medicare beneficiaries.

38.    To enroll as authorized participants in Medicare, DME providers are required to make the following certification:

> I agree to abide by the Medicare laws, regulations and program instructions that apply .... I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal Anti-Kickback Stature, 42 U.S.C. section 1320a-7b(b) (section 1128B(b) of the Social security Act) ....).

9

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Medicare Enrollment Application: Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Suppliers, CMS-855S, at 24.[3]

39. Physicians, such as the telehealth physicians who participated in the scheme described *infra*, make an identical certification. *See* Medicare Enrollment Application: Physicians and Non-Physician Providers, CMS-855I, at 23.[4]

40. A provider's compliance with applicable Medicare program rules and regulations is material to CMS's decision to pay and its subsequent payment of claims. In order to be reimbursable by Medicare, services must be medically necessary. *See* 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k).

41. After enrolling in Medicare, to receive payment under Medicare Part B, a provider must submit claims to the appropriate Medicare Administrative Contractor or "MAC"[5] using a CMS-1500 form.[6] The CMS-1500 form requires the provider to identify the services for which reimbursement is sought using a five-digit Current Procedural Terminology ("CPT") or Healthcare Common Procedural Coding System ("HCPCS") code.

42. The CMS-1500 form also requires the provider to make the following certification:

---

[3] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms855s.pdf (last accessed Sept. 2, 2021).
[4] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms855i.pdf (last accessed Sept. 2, 2021).
[5] A MAC is a private insurer awarded a geographic jurisdiction to process medical claims for Medicare beneficiaries. At all relevant times the A/B MAC for Florida was First Coast Service Options, Inc., and the DME MAC for Florida was CGS Administrators, LLC.
[6] *Available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last accessed Sept. 2, 2021).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete ... [and] 4) **this claim ... complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment including but not limited to the Federal anti-kickback statute** ...; [and] 5) **the services on this form were medically necessary**....

Form CMS-1500, *verso* (emphasis added).

43.    A provider may also submit the electronic equivalent of this claim form, which contains a substantially similar certification.

44.    CMS guidance as to electronic claims submission is found in Chapter 24 of the Medicare Claims Processing Manual (the "Claims Manual"). Among other things, the guidance specifies the minimum content of the enrollment form that a local MAC may use to sign up providers to submit claims electronically. Per the Claims Manual, such an enrollment form must contain, and the enrolling provider must acknowledge, at least the following statements:

> The provider agrees to the following provisions for submitting Medicare claims electronically to CMS or to CMS' A/B MACs ....
>
> * * *
>
> 7. That it will submit claims that are accurate, complete, and truthful;
>
> * * *
>
> 12. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsified or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law; [and]
>
> * * *
>
> 14. That it will research and correct claim discrepancies[.]

Claims Manual, Ch. 24 § 30.2.

11

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

45.     Because it is not feasible for MAC or CMS personnel to review every patient's medical records for the millions of claims for payments they receive from providers, the Medicare program relies on providers to comply with Medicare requirements and trusts providers to submit truthful and accurate certifications and claims.

46.     The submission of the certifications described above, if false, renders all subsequent claims for Medicare or Medicaid reimbursement false and fraudulent for purposes of the FCA. 31 U.S.C. § 3729(a).

**C.     The Anti-Kickback Statute**

47.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), (the "AKS") criminalizes the offering, paying, soliciting, or receipt of anything of value to induce the furnishing of any item or service for which payment may be made under a Federal health program.

48.     A violation of the AKS is, in turn, a violation of the FCA. *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA].").

**D.     Documentation, Physician Order, and Face-to-Face Encounter Requirements for DME Suppliers**

49.     DME suppliers must maintain adequate documentation demonstrating the medical necessity of the DME billed to Medicare, including the patient's past medical history and treatment records.

12

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

50.     In addition, Medicare's conditions of payment require that the DME supplier (a) obtain a written order from the patient's treating practitioner, and (b) maintain documentation of a face-to-face encounter between the treating practitioner and the beneficiary conducted no more than six months prior to the written order. *See* Medicare Program Integrity Manual (the "Integrity Manual"), Ch. 5, §§ 5.2-5.4.

51.     The face-to-face encounter must be used for the purpose of gathering subjective and objective information associated with diagnosing, treating, or managing a clinical condition for which the DME is ordered. Integrity Manual Ch. 5, § 5.4.

52.     In March 2020, CMS suspended the face-to-face encounter requirement during the COVID-19 public health emergency ("PHE"). *See* Interim Final Rule CMS-1744-IFC.[7] However, the face-to-face encounter requirement is applicable to any DME claims submitted to Medicare prior to March 2020 and after the COVID-19 PHE is declared to have ended.

**E.     Medicare's Prohibition on Unsolicited Marketing Calls to Medicare Beneficiaries**

53.     DME suppliers are prohibited from making unsolicited telephone calls to Medicare beneficiaries regarding the furnishing of a covered item, unless:

---

[7] *Available at* https://www.cms.gov/files/document/covid-final-ifc.pdf (last accessed Sept. 2, 2021).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

    (i)    The individual has given written permission to the supplier to make contact by telephone regarding the furnishing of a covered item, 42 U.S.C. § 1395m(a)(17)(A)(i);

    (ii)    The supplier has furnished a covered item to the individual and the supplier is contacting the individual only regarding the furnishing of such covered item, *id.* § 1395m(a)(17)(A)(ii); or

    (iii)    If the contact is regarding the furnishing of a covered item other than a covered item already furnished to the individual, the supplier has furnished at least 1 covered item to the individual during the 15-month period preceding the date on which the supplier makes such contact, *id.* § 1395m(a)(17)(A)(iii).

54.    Payment for claims generated by a prohibited solicitation is likewise prohibited. *Id.* § 1395m(a)(17)(B).

**VI.**
**DEFENDANTS' FRAUD**

55.    In 2017, Relator provided consulting services to Optimal Medical Group. She later became consultants for numerous other DME suppliers, including TPK Medical Supply and TS&A Medical Supply, who were experiencing Medicare claim denials.

56.    Relator had access to the DME suppliers' records and patient documentation.

14

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

57.    Upon reviewing these records, Relator discovered that the DME suppliers had virtually no clinical documentation to support the claims they billed to Medicare.

58.    For most claims, the DME suppliers were able to produce only a written order and a recording of a sales call between the patient and a call center operated by Pharma Management.

59.    However, there was no documentation of any face-to-face encounter or any prior treatment by the ordering/prescribing physician.

60.    Because many of the same individuals who managed and operated Optimal Medical Group, TPK Medical Supply, and TS&A Medical Supply were also the principals of Pharma Management, Relator was given access to documents and information that revealed Pharma Management's process for procuring patients and orders.

61.    Relator learned that Pharma Management had entered into agreements with numerous DME suppliers, under which Pharma Management would generate, in exchange for an exorbitant fee, DME patients and orders, which the DME suppliers could then bill to Medicare. Pharma Management further agreed to produce all documentation needed for Medicare reimbursement.

62.    Pharma Management called patients directly to obtain their information and consent for DME orders.

63.    However, Pharma Management did not have the patients' consent to receive marketing calls.

15

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

64.    In or around March 2020, one of Pharma Management's DME suppliers received an audit from the Supplier Audit and Compliance Unit. Pharma Management's principals admitted to Relator that they did not have the patients' consent to receive marketing calls, and attempted to fabricate backdated patient consent forms to pass the audit request.

65.    Relator explicitly warned Pharma Management's principals that this was illegal and fraudulent, yet Pharma Management continued to make unsolicited marketing calls to patients.

66.    After calling the patients, Pharma Management sent the patients' information to various "physician onboarding centers," including Medtech Worldwide, Inc. and Virtual Verifications, Inc., which paid telehealth physicians to sign written orders for DME for those patients.

67.    The telehealth physicians who signed the orders were not the patients' treating physicians. They did not have a treating history with the patients and often did not perform any evaluation of the patient before signing the orders.

68.    Medtech Worldwide and Virtual Verifications charged various fees to Pharma Management for each such patient "consultation."

69.    Pharma Management then sent the signed DME orders to the DME suppliers, who filled the orders and submitted the claims to Medicare.

70.    These DME suppliers, including the DME Supplier Defendants, violated the AKS by paying a fee to Pharma Management for the referrals for which they then submitted claims to Medicare.

16

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

71.     Likewise, Pharma Management and its principals violated the AKS by paying a fee to the "physician onboarding centers" such as Medtech Worldwide, Inc. and Virtual Verifications, Inc. for signed DME orders they knew would be submitted to Medicare.

72.     Each such claim procured in violation of the AKS was therefore false and fraudulent for purposes of the FCA.

73.     The claims submitted by the DME Supplier Defendants also failed to meet the requisite conditions of payment, and were not eligible for Medicare reimbursement, due to the lack of (a) adequate clinical documentation of medical necessity, such as the patient's past medical and treatment history; (b) the written order for the DME from the patient's treating physician; (c) documentation of the face-to-face encounter between the patient and the treating physician; and (d) patients' consent for contact from DME suppliers or their marketers. For these reasons as well, the claims were false and fraudulent for purposes of the FCA.

74.     Between 2019 and 2021, Optimal Medical Group, LLC, TPK Medical Supply, LLC, and TS&A Medical Supply, LLC, received over $5 million from Medicare for claims that violated the AKS and did not qualify for reimbursement.

75.     Throughout 2020, Relator advised, on multiple occasions, the DME Supplier Defendants, including Pharma Management's principals, and defendant Arthur Geiss, who was working for Medtech Worldwide, that their processes for generating patients and telehealth physician orders were fraudulent and constituted an illegal kickback scheme.

17

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

76.    The DME Supplier Defendants continued to submit false claims to Medicare.

77.    Pharma Management, Medtech Worldwide, and Virtual Verifications also continued to generate and send DME orders with the false or inadequate documentation to other DME suppliers, fully knowing that the DME suppliers would bill the DME orders to Medicare.

78.    Accordingly, Defendants knowingly submitted and/or caused the submission of false claims to Medicare, and further conspired with each other to cause the submission of false claims to Medicare.

## COUNT I
## FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS

79.    Relator repeats and re-alleges paragraphs 55-78 inclusive, as if fully set forth herein.

80.    As described above, Defendants knowingly presented or caused to be presented claims for payment to CMS and/or its MAC that were procured in violation of the AKS. Those claims were therefore false and fraudulent for purposes of the FCA.

81.    The claims were also false and fraudulent in that they sought reimbursement for DME claims that were medically unnecessary and obtained through prohibited solicitations, and that did not meet multiple conditions of payment from Medicare, including the written order and face-to-face encounter requirements. Each such claim was false within the FCA's meaning.

18

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

82.    The presentation of these false claims caused CMS and/or its MAC to pay out monies that they would not have paid if they had known of the falsity of these claims.

83.    CMS and its MAC are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in the Medicare program.

84.    Accordingly, Defendants' knowing presentations of false or fraudulent claims for payment to CMS and/or its MAC were violations of 31 U.S.C. § 3729(a)(l)(A).

85.    Each presentation of a false or fraudulent claim to CMS and/or its MAC is a separate violation of the FCA.

86.    By reason of the false or fraudulent claims that Defendants knowingly presented, the United States has been damaged in an amount to be proven at trial.

**COUNT II**
**FALSE CLAIMS ACT: FALSE RECORD OR STATEMENT**

87.    Relator repeats and re-alleges paragraphs 55-78 inclusive, as if fully set forth herein.

88.    As described above, Defendants knowingly made, used, or caused to be made or used, false records and statements when they caused claims for payment to be presented to CMS and/or its MAC, including, but not limited to, the following:

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

a. The DME Supplier Defendants created CMS-1500 claim forms or electronic equivalents that falsely certified that the DME claims billed to Medicare complied with all Medicare program rules;

b. Pharma Management and its principals made false statements to DME suppliers that their documentation would be sufficient for reimbursement and compliant with Medicare program rules, and further created false and backdated patient consent for contact forms; and

c. Medtech Worldwide and Virtual Verifications, along with their respective principals Steven Hans Goldberg and Arthur Geiss, made and/or used DME orders that falsely stated that the telehealth physician had evaluated each patient for the DME.

89. The above false records and statements were material to the claims for payment DME suppliers submitted to Medicare.

90. CMS and its MAC are grantees or other recipients of money from the United States Government within the meaning of 31 U.S.C. § 3729(b)(2)(A)(ii). All such money is to be spent to advance the United States' interest in the Medicare program.

91. Accordingly, Defendants' knowing making and use of false records or statements material to the false or fraudulent claims for payment that Defendants submitted to CMS and/or its MAC were violations of 31 U.S.C. § 3729(a)(l)(B).

92. Each such making or use of a false record or statement is a separate violation of the FCA subject to a civil penalty pursuant to 31 U.S.C. § 3729.

**COUNT III**
**FALSE CLAIMS ACT: CONSPIRACY TO GET A FALSE CLAIM PAID**

93. Relator repeats and re-alleges paragraphs 55-78 inclusive, as if fully set forth herein.

20

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

94.     As alleged above, Defendant conspired with each other, telehealth physicians, and DME suppliers to submit to Medicare false claims for medically unnecessary DME that did not meet multiple conditions of payment from Medicare and were procured in violation of the AKS.

95.     Accordingly, Defendant conspired to submit false claims in violation of 31 U.S.C. § 3729(a)(l)(C).

96.     As a result of this conspiracy, the United States has been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Relator respectfully requests that this Court enter judgment in her favor and that of the United States, and against Defendants, granting the following on all Counts:

(A)     an order requiring Defendants to immediately cease and desist from the conduct described herein and all similar conduct;

(B)     an award to the United States of treble its damages, a statutory penalty for each violation of the FCA, and its costs pursuant to 31 U.S.C. § 3729(a)(3);

(C)     an award to Relator in the maximum amount permitted under 31 U.S.C. § 3730(d), and the reasonable attorneys' fees and costs she incurred in prosecuting this action;

(D)     awards to the United States and Relator of pre- and post-judgment interest at the rates permitted by law; and

(E)     an award of such other and further relief as this Court may deem to be just and proper.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

<u>**DEMAND FOR TRIAL BY JURY**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by the Complaint.

Dated: September 22, 2021

                                        Respectfully submitted,


                                        */s/ Jay P. Lechner*
                                        **LECHNER LAW**
                                        **Local Counsel**
                                        Jay P. Lechner, Esq.
                                        Florida Bar No.: 0504351
                                        Jay P. Lechner, P.A.
                                        201 E. Kennedy Blvd., Suite 412
                                        Tampa, FL 33602
                                        (813) 842-7071 (phone)
                                        (813) 225-1392 (fax)
                                        *jplechn@jaylechner.com*
                                        *admin@jaylechner.com*

                                        **BROWN, LLC**
                                        **Lead Counsel**
                                        Chunsoo "Terence" Park
                                        Jason T. Brown
                                        Patrick S. Almonrode
                                          (*pro hac vice* applications
                                        forthcoming)
                                        111 Town Square Place, Suite 400
                                        Jersey City, NJ 07310
                                        (877) 561-0000 (phone)
                                        (855) 582-5297 (fax)
                                        *terence.park@jtblawgroup.com*
                                        *jtb@jtblawgroup.com*
                                        *patalmonrode@jtblawgroup.com*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2021, I submitted a paper copy of this Complaint to the Clerk of the Court in accordance with 31 U.S.C. § 3730(b) and Local Rule 1.11. I also caused a copy to be served, along with written disclosure of substantially all material evidence and information possessed by Relator, upon the following:

*by USPS Registered Mail, Return Receipt Requested, and by Email, to*

Charles T. Harden, III
Assistant US Attorney
US Attorney's Office, Middle District of Florida
400 N. Tampa St.
Suite 3200
Tampa, FL 33602
*Charles.Harden@usdoj.gov*

Office of the Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
*civilfrauds.quitams@usdoj.gov*

*/s/ Jay P. Lechner*